UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RUBY GRAPES, LLC,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>UNITED PARCEL SERVICE, INC. and<br>UPS CAPITAL INSURANCE AGENCY,<br>INC.,<br><br>　　　　Defendants. | Case No.  26-cv-01743-JSC<br><br>**ORDER RE: MOTION TO COMPEL ARBITRATION**<br><br>Re: Dkt. No. 7 |

Plaintiff sues Defendants for mishandling shipments and denying damaged shipment claims.  (Dkt. No. 1-1 at 5-15.)[1]  Now pending before the Court is Defendants' motion to compel arbitration.  (Dkt. No. 7.)  Although Plaintiff has not responded to Defendants' motion, the Court has carefully considered Defendants' motion, concludes oral argument is not required, *see* N.D. Cal. Civ. L.R. 7-1(b), VACATES the April 30, 2026 hearing, and GRANTS Defendants' motion to compel arbitration.  Defendants have shown there is no genuine dispute an arbitration agreement exists and encompasses the dispute.

**BACKGROUND**

**I.　　COMPLAINT ALLEGATIONS**

Plaintiff has a shipping account under the name Mission Trading Company, Inc., which "acted as [its] account administrator . . . for the purpose of shipping inventory, fulfilling customer orders, and paying shipping charges" for Plaintiff's products to customers.  (Dkt. No. 1-1 at 7.) "Shipments tendered by Plaintiff to Defendants[] were shipped under its various tradenames . . .

---

[1] Record citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of the document.

United States District Court<br>Northern District of California

[and] included perishable and non-perishable goods, often packaged together, and were clearly marked with 'FRAGILE' and 'THIS SIDE UP' labeling." (*Id.*) "Plaintiff packaged the Shipments with thermal insulation, protective wrapping, foam reinforcement, heavy duty gauge straps and frozen cold packs." (*Id.*) "Plaintiff and Defendant UPS entered into valid and enforceable shipping contracts, memorialized through shipping labels, waybills, invoices, and UPS's published terms and conditions." (*Id.* at 9.)

Although "Defendant UPS knew or should have known that the Shipments were temperature-sensitive and fragile, based on their packaging and labeling," it "repeatedly mishandled Plaintiff's Shipments, causing delivery delays, spoilage, thawing, overturned packages, and crushed contents." (*Id.* at 8.) Plaintiff estimates over 1,0000 Shipments have been damaged since 2019, each of which "incurred average lost shipping fees of $40 and average product losses of $150." (*Id.*)

"Initially, UPS reimbursed Plaintiff for damage claims and reshipping costs, but later began rejecting nearly all claims without justification." (*Id.*) Defendants have denied "over 900 valid claims related to the Shipments, despite timely filings and submission of photographs, invoices, and damage documentation." (*Id.*) And "[i]n 2023, Defendant UPS Capital unilaterally canceled its insurance contract." (*Id.*)

## II.    PROCEDURAL HISTORY

Plaintiff sued Defendants in California Superior Court for (1) breach of contract, (2) negligence, (3) intentional interference with contractual relations, (4) intentional interference with prospective economic advantage, (5) negligent interference with contractual relations, and (6) negligent interference with prospective economic advantage. (Dkt. No. 1-1 at 9-14.) Defendants removed the case to this Court based on diversity jurisdiction and moved to compel arbitration. (Dkt. Nos. 1, 7.) Although Plaintiff's response to the motion to compel was due by March 20, 2026, *see* N.D. Cal. L.R. Civ. 7-3(a), as of the date of this Order Plaintiff has not responded nor otherwise communicated with the Court.

## III.    RELEVANT FACTS RE: ARBITRATION AGREEMENT

Based on tracking numbers provided by Plaintiff's counsel for shipments at issue in the

complaint, Defendants identified the shipper's account number and a Carrier Agreement "associated with this account number, . . . pursuant to which UPS offered discounted pricing to Plaintiff." (Dkt. No. 7-1 ¶ 3.) The Carrier Agreement was signed by Sameer Mission on behalf of "MTC/SSR," which Defendants interpret as an abbreviation for Mission Trading Company, Inc., and the Agreement became effective on July 8, 2019. (*Id.* ¶ 4; Dkt. No. 7-2 at 2.) The Carrier Agreement also states: "All Services provided by UPS shall be pursuant to . . . the UPS Tariff/Terms and Conditions of Service in effect at the time of shipping, each of which are incorporated herein by reference." (Dkt. No. 7-2 at 2.)

Defendants provide the July 8, 2019 and January 26, 2026 versions of the UPS Tariff/Terms and Conditions of Service ("Terms of Service"). (Dkt. Nos. 7-3, 7-4.) Both versions include the following provision in bold:

> Agreement to Arbitrate Claims: Claimant and UPS agree that, except for disputes that qualify for state courts of limited jurisdiction (such as small claims, justice of the peace, magistrate court, and similar courts with monetary limits of less than $30,000 on their jurisdictions over civil disputes), any controversy or claim, whether at law or equity, arising out of or related to the provision of services by UPS, regardless of the date of accrual of such dispute, shall be resolved in its entirety by individual (not class-wide nor collective) binding arbitration.

(Dkt. No. 7-3 at 27; Dkt. No. 7-4 at 30-31.) Both Terms of Service also define "Claimant" as including "any person asserting . . . any claim in any forum for legal or equitable relief – including, but not limited to, any claim for damages, refunds, credits, injunctive relief, and declaratory relief – arising out of or related to the provision of services by UPS." (Dkt. No. 7-3 at 5; Dkt. No. 7-4 at 5.)

Defendants further declare the Terms of Service "have included a mandatory binding arbitration requirement since 2013," and the binding arbitration requirement "has not changed in respects relevant to this declaration between 2019 and 2026." (Dkt. No. 7-1 ¶ 8.) In addition, "the effective version of" the Terms of Service "is posted at all times at ups.com" and "was available for review on ups.com during th[e] entire period" between July 2019 and the present. (*Id.* ¶ 6.)

## DISCUSSION

The Federal Arbitration Act ("FAA") governs arbitration agreements "evidencing a

3

transaction involving commerce" and provides arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for revocation of any contract." 9 U.S.C. § 2. Under the FAA, "arbitration agreements [are] on an equal footing with other contracts," and therefore courts must "enforce them according to their terms." *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 67 (2010) (citations omitted). In resolving a motion to compel arbitration under the FAA, "a court's inquiry is limited to two gateway issues: (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Lim v. TForce Logistics, LLC*, 8 F.4th 992, 999 (9th Cir. 2021) (quotation marks and citation omitted). "If both conditions are met, the FAA requires the court to enforce the arbitration agreement in accordance with its terms." *Id.* (cleaned up).

## I.      AGREEMENT TO ARBITRATE

The party seeking to compel arbitration "bears the burden of proving the existence of an agreement to arbitrate by a preponderance of the evidence." *Johnson v. Walmart Inc.*, 57 F.4th 677, 681 (9th Cir. 2023). "State contract law controls whether the parties have agreed to arbitrate." *Knutson v. Sirius XM Radio Inc.*, 771 F.3d 559, 565 (9th Cir. 2014) (citation omitted). Under California law, contract formation requires "a manifestation of mutual assent." *Binder v. Aetna Life Ins. Co.*, 75 Cal. App. 4th 832, 850 (1999). In addition, under California law, "[a] contract may incorporate documents and terms by reference." *In re Holl*, 925 F.3d 1076, 1084 (9th Cir. 2019) (citing *Shaw v. Regents of Univ. of Cal.*, 58 Cal. App. 4th 44, 54 (1997)). "[T]he terms of the incorporated document are binding [] so long as the incorporation is 'clear and unequivocal, the reference [is] called to the attention of the other party and he [] consent[s] thereto, and the terms of the incorporated document [are] known or easily available to the contracting parties.'" *Id.* (quoting *Shaw*, 58 Cal. App. 4th at 54)).

Defendants have shown by a preponderance of the evidence Plaintiff signed, and therefore agreed to, the Carrier Agreement. (Dkt. No. 7-1 ¶¶ 3-4; Dkt. No. 7-2 at 2.). *See Marin Storage & Trucking, Inc. v. Benco Contracting & Eng'g, Inc.*, 89 Cal. App. 4th 1042, 1049 (2001) ("[O]ne who signs an instrument which on its face is a contract is deemed to assent to all its terms."). And the signed Carrier Agreement states: "All Services provided by UPS shall be pursuant to" the

United States District Court
Northern District of California

Terms of Service "in effect at the time of shipping, each of which are incorporated herein by reference." (Dkt. No. 7-2 at 2.)  The Carrier Agreement therefore clearly and unequivocally incorporated the Terms of Service by reference and called such incorporation to Plaintiff's attention, and Plaintiff agreed to the incorporation by signing the Carrier Agreement.  *See In re Holl*, 925 F.3d at 1084 (quoting *Shaw*, 58 Cal. App. 4th at 54).  And Defendants' declaration the effective version of the Terms of Service "was available for review on ups.com during th[e] entire period" between July 2019 and the present is undisputed evidence the "terms of the incorporated document [are] known or easily available to the contracting parties." (Dkt. No. 7-1 ¶ 6.)  *In re Holl*, 925 F.3d at 1084; *see also id.* (affirming the district court's finding of a valid incorporation by reference when "[i]t is undisputed that, at all relevant times, users could access the UPS Tariff/Terms and Conditions of Service on ups.com").

Furthermore, Defendants have shown the Terms of Service from at least July 8, 2019, when the Carrier Agreement became effective, through January 26, 2026, included an agreement to arbitrate.  Defendants attach the July 8, 2019 and January 26, 2026 versions of the Terms of Service, which include an agreement to arbitrate.  (Dkt. No. 7-3 at 27; Dkt. No. 7-4 at 30-31.) Defendants also declare the Terms of Service "have included a mandatory binding arbitration requirement since 2013," and the binding arbitration requirement "has not changed in respects relevant to this declaration between 2019 and 2026." (Dkt. No. 7-1 ¶ 8.)  Although Plaintiff does not specifically allege when its claims arose, its allegation "over 1,000 Shipments have been damaged by Defendant UPS since 2019" is consistent with Defendants' evidence.  (Dkt. No. 1-1 at 8.)  So, as Plaintiff does not oppose Defendants' motion to compel arbitration or provide any evidence it did not agree to arbitrate, Defendants have proven there is no genuine dispute as to the existence of an agreement to arbitrate.[2]

---

[2] Because the Terms of Service define UPS Capital Insurance Agency, Inc. as UPS's "licensed affiliate[]" and explain they contain the terms by which "United Parcel Service" or "United Parcel Service, Inc." "is engaged in the transportation of Package shipments itself and jointly through interchange with its affiliates," UPS Capital Insurance Agency, Inc. and United Parcel Service, Inc. may both enforce the arbitration agreement in the Terms of Service.  (Dkt. No. 7-3 at 5, 30; Dkt. No. 7-4 at 5, 34.)  *See Ridgeway v. Nabors Completion & Prod. Servs. Co.*, 725 F. App'x 472, 475 (9th Cir. 2018) (allowing parties defined in an arbitration agreement to enforce its terms).

United States District Court
Northern District of California

United States District Court
Northern District of California

## II.   ENCOMPASSES THE DISPUTE

Under the 2019 and 2026 Terms of Service, the parties agree "any controversy or claim, whether at law or equity, arising out of or related to the provision of services by UPS, regardless of the date of accrual of such dispute, shall be resolved in its entirety by . . . binding arbitration." (Dkt. No. 7-3 at 27; Dkt. No. 7-4 at 30-31)  Plaintiff's claims seek to recover damages for Defendants' alleged mishandling of Plaintiff's shipments and refusal to provide coverage on subsequent shipment damage claims.  (Dkt. No. 1-1 at 8, 14.)  Plaintiff's claims therefore "aris[e] out of [and] relate[] to the provision of [shipping] services by [Defendants]."  (Dkt. No. 7-3 at 27; Dkt. No. 7-4 at 30-31.)  *See also Moule v. United Parcel Serv. Co.*, No. 1:16-CV-00102-JLT, 2016 WL 3648961, at *12 (E.D. Cal. July 7, 2016) (finding "the plain language of the UPS Terms indicates that the disputed issue—which arises from the handling of a package Plaintiff shipped with UPS—is encompassed within the arbitration provision, and has not been excluded from arbitration").  So, the arbitration agreement encompasses the dispute.

## CONCLUSION

Because a valid arbitration agreement exists and encompasses the dispute, and Plaintiff has not opposed Defendants' motion to compel arbitration, the Court GRANTS Defendants' motion to compel arbitration of Plaintiff's claims and stays the case pending arbitration.  *See Smith v. Spizzirri*, 601 U.S. 472, 474, 476-78 (2024) (requiring stay pending arbitration).  On or before April 1, 2027, the parties shall jointly provide a written update on the status of the arbitration.

This Order disposes of Docket No. 7.

**IT IS SO ORDERED.**

Dated: April 8, 2026

JACQUELINE SCOTT CORLEY
United States District Judge

6